**Walter M. ZURANSKI, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**Orval W. ANDERSON, Individually and in his capacity as Judge of the Lake County Court, Division III, et al, Defendants.**

**No. H 84–56.**

United States District Court, N.D. Indiana, Hammond Division.

March 5, 1984.

Myrna Hart, Project Justice & Equality, Donald J. Evans, Calumet Chapter—Indiana Civ. Liberties Union, Valparaiso, Ind., for plaintiff.

Arthur Thaddeus Perry, Deputy Atty. Gen., Linley E. Pearson, Atty. Gen., Indianapolis, Ind., Robert Deloney, Gary, Ind., Raymond L. Szarmach, East Chicago, Ind., John A. Dull, Crown Point, Ind., for defendants.

## MEMORANDUM OF DECISION

KANNE, District Judge.

This case discloses an instance where an Indiana state court judge, through indifference, ignored Indiana law and caused an improper sentence to be imposed upon an indigent traffic offender. In addition to the initial regular 60 day jail sentence he imposed, the state court judge directed that the indigent traffic offender pay a fine and costs of $450.00 by a further term of imprisonment to be served after the regular sentence at $10.00 per day.

Before acting on behalf of the indigent traffic offender, a legal assistance agency waited until the regular sentence was concluded and the improper sentence had commenced. Then they sought of the federal court, not the release of the indigent from jail, but rather that the federal court oversee all further sentencings in the state court and prevent any similar improper sentences.

The basic and fundamental issue presented is whether the Indiana state court system should be afforded an opportunity to review and supervise the sentencing practices of a state court judge or be preempted in that activity by the federal courts.

Based on the facts in this case and as indicated by the following order, plaintiff's initial recourse with regard to improperly imposed sentences rests with the Indiana state court system and its review and supervisory mechanisms—not with the federal courts.

With consent of counsel, the Court proceeded on February 9, 1984, with submission of evidence and hearing on plaintiff's Petition for Preliminary Injunction, plaintiff's Petition for Class Certification and defendants' Motion to Dismiss or in the Alternative for Summary Judgment as to plaintiff's claims for relief. The court orally announced its ruling in open court on February 10, 1984. This written Memorandum of Decision follows.

The Court first sets forth the facts disclosed by the evidence and the pleadings.

The named plaintiff, Walter M. Zuranski is a twenty-year old, white male with a ninth grade education. He has been intermittently employed as a mechanic and cook. Plaintiff at the critical time in question, December 20, 1983, had little money of his own and qualified for indigent status.

The defendant, Orval W. Anderson, is the judge of a state court described as the "Lake County Court, Division III." Under Indiana law, as a county court judge in the Indiana state judicial system he has jurisdiction over traffic offenses, small claims, misdemeanors and Class D felonies. The defendant Judge Anderson is empowered to impose sentences of imprisonment and assess fines and costs.

The plaintiff was initially stopped for a traffic violation in September of 1983. He was given a ticket for driving with a suspended license and resisting law enforcement, i.e., fleeing a police officer. He signed the ticket promising to appear in court to answer the traffic charges. Plaintiff, however, signed the name of his brother to the ticket. Plaintiff thereafter left to seek his fortune in California. Upon returning to visit his grandfather approximately two months later, he was arrested on an outstanding warrant on November 15, 1983.

Following the plaintiff's overnight incarceration, the plaintiff's sister and a friend posted a $500.00 cash bond after being advised by the clerk that the bond would be used to satisfy any fine and costs. The plaintiff was released on recognizance on November 16, 1983.

On December 20, 1983, plaintiff appeared for trial on the traffic charge before the defendant Judge Anderson. The testimony of the plaintiff and the transcript of the proceedings indicate that plaintiff was ad-

vised of his constitutional rights including his right to counsel. Plaintiff waived his constitutional rights including his right to the appointment of a public defender. He thereafter entered a plea of guilty to driving with a suspended license, was convicted of said offense, and a second charge of resisting law enforcement was dismissed.

The defendant Judge Anderson then sentenced the plaintiff to 60 days in jail, and noting that a $500.00 cash bond had been posted, fined the plaintiff $409.00 and taxed costs in the sum of $41.00. The fine and cost was calculated by the sentencing judge to be the amount of cash bond of $500.00 less the $50.00 administrative fee.

After imposing the fine the defendant Judge Anderson failed to inquire as to the indigency status of Mr. Zuranski. At no time during the proceeding did the plaintiff advise the defendant judge that he was without funds to pay any fine and costs.

Immediately thereafter the plaintiff was taken into custody and commenced serving the regular imposed sentence of 60 days.

Thereupon the plaintiff's friend, rather than permit the cash bond to be used to satisfy the plaintiff's fine and costs, demanded of the court clerk that the bond money be returned. The clerk complied and the $450.00 ($500.00 less an administrative fee of $50.00) was returned to the friend.

Through subsequent clerical action, the fine and costs were then entered on plaintiff's record as unpaid and his commitment order directed that he serve out the $450.00 fine and costs at $10.00 per day.

After commencing his regular sentence, plaintiff contacted his sister with regard to his potential period of incarceration for nonpayment of fine and costs. Plaintiff's sister made a number of inquiries through jail personnel and the staff of the defendant Judge Anderson concerning her brother's status. She, as did the plaintiff, initially questioned whether the fine must be served at $5.00 a day or $10.00 per day.

On or about January 10, 1984, plaintiff's sister, on behalf of the plaintiff, contacted one of plaintiff's present counsel, Ms. Hart, of Project Justice and Equality, a legal assistance agency.

Ms. Hart and Project Justice and Equality were made aware of the fact that plaintiff was indigent and was to commence incarceration for nonpayment of fine and costs in nine days. During that nine day period Project Justice and Equality took no action in any court to secure plaintiff's release upon completion of his regular term of imprisonment.

Plaintiff completed the regular 60 day sentence (less 30 days good time credit) on January 19, 1984. He commenced serving his imprisonment for nonpayment of fine and costs on January 20, 1984.

On January 27, 1984, 17 days after they were notified of the potential improper sentence (10 days prior to the commencement of said sentence and 7 days after the plaintiff began serving the sentence for nonpayment of his fine and costs) Project Justice and Equality had still not requested any court to order the plaintiff's release from custody. They did, however, on January 27, 1984, file this action in federal court seeking injunctive relief against future actions, declaratory relief, damages and class certification.

On January 28, 1984, after the filing of the writ of habeas corpus in state court, the plaintiff was finally released from custody.

At the time of the hearing on this matter there were no prisoners in the Lake County Jail serving sentences for nonpayment of fines and costs.

The single incident involving the plaintiff shows indifference and inefficient procedures which allowed an indigent to be imprisoned for failure to pay fine and costs. Even given the failure of the judge to determine the indigency status of Mr. Zuranski, action by and on behalf of the plaintiff subsequent to the sentencing should have alerted the defendant judge to the potential commencement of an improper sentence. Apparently where a defendant's indigency is made known to him the de-

fendant judge generally does suspend fines and costs.

Having set forth the facts the Court now examines the plaintiff's claims for relief.

■ A transcendent issue in this case is one of federal jurisdiction. Those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the United States Constitution by alleging an actual case or controversy. *City of Los Angeles v. Lyons,* —— U.S. ——, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

This issue of jurisdiction will be reviewed first by focusing on Mr. Zuranski's standing to maintain this action on his own behalf. Plaintiff's individual request for equitable relief is examined first with regard to those claims based on violation of state law and then with regard to those claims based on federal question.

Turning to the state claims the plaintiff seeks equitable relief alleging the defendant Judge Anderson violated Indiana state law and the Indiana Constitution.[1]

The defendant Judge Anderson is an official of the State of Indiana. *Pruitt v. Kimbrough,* 536 F.Supp. 764 (N.D.Ind. 1982), *aff'd,* 705 F.2d 462 (7th Cir.1983); *Blackwell v. Cook,* 570 F.Supp. 474 (N.D. Ind.1983). Plaintiff's allegations concern action by the state court judge in his official capacity, to-wit: imposition of sentence following conviction.

■ A claim that a state official violated state law in carrying out his official responsibilities is a claim against the state that is protected by the Eleventh Amendment.

*Pennhurst State School & Hospital v. Halderman,* —— U.S. ——, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Also, in the *Pennhurst* case, the Court, 104 S.Ct. at page 919, stated: "We now hold that this principle applies as well to state law claims brought into federal court under pendent jurisdiction."

■ *Karr v. Blay,* 413 F.Supp. 579 (N.D.Ohio 1976) sets forth the position to be taken by this court in the case at bar:

Since jurisdiction of this action lies under the Civil Rights Act, this Court has authority only to review state action that allegedly deprives plaintiff of a federal right. Whether state officers have obeyed state statutes presents an issue of a state right, not a federal right. A state official may act unlawfully under state law without thereby violating the Constitution. Since this Court is not called upon to determine the constitutionality of the state statutes, it cannot by indirection in reaching the federal issues, pass judgment on the adequacy of conduct addressed by state laws. State courts are the proper forum in which to raise issues of compliance with these state laws. 413 F.Supp., at 584.

■ Regardless of the validity of the plaintiff's claim, a federal court is denied jurisdiction by the Eleventh Amendment of the United States Constitution to consider the allegations that Judge Orval Anderson violated the Indiana Constitution or Indiana statutes. Since any action relating to the remaining defendants who are county officials would be derivative, no relief is warranted under the state law claims.

---

1. Indiana Code § 35–38–1–18 provides in pertinent part:

(a) Whenever the court imposes a fine or costs, it shall conduct a hearing to determine whether the convicted person is indigent. If he is not indigent, the court shall direct that the person pay:

(1) The entire amount at the time sentence is pronounced;

(2) The entire amount at some later date; or

(3) Specified parts at designated intervals.

(b) Upon any default in the payment of the fines or costs:

(1) The county attorney may bring an action on a debt for the unpaid amount; or

(2) The court may direct that the person, if he is not indigent, be committed to the county jail and credited toward payment at the rate of ten dollars [$10.00] for each twenty-four [24] hour period he is confined, until the amount paid plus the amount credited equals the entire amount due.

Article I, Section 22, of the Indiana Constitution provides in pertinent part:

[T]here shall be no imprisonment for debt, except in the case of fraud.

Moving from the claims based on state law, the Court next considers the equitable relief sought by plaintiff based on federal question jurisdiction under 28 U.S.C. § 1331.

Alleging violations of the due process and equal protection provisions of the Fourteenth Amendment to the U.S. Constitution, plaintiff seeks: (1) a declaratory judgment under 28 U.S.C. §§ 2201, 2202; (2) injunctive relief under 42 U.S.C. § 1983; and (3) an award of attorneys' fees under 42 U.S.C. § 1988. Plaintiff relies on *Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971). Indeed the *Tate* case holds that imprisoning an indigent for inability to pay a fine is violative of the U.S. Constitution. However, the *Tate* case came before the U.S. Supreme Court only after the Texas state courts had denied Tate's petition for writ of habeas corpus.

Although plaintiff's complaint alleges that at the time of filing he was incarcerated in the Lake County Jail, this is not a case where plaintiff seeks action by the Court to release him from custody. Plaintiff's request for equitable relief is based on potential future action by the defendant judge.

■ The facts in this case disclose that the plaintiff was not in custody at the time of the hearing on February 9, 1984. The rule that a claim does not become moot where it is capable of repetition, yet evades review, is not applicable. The capable of repetition doctrine applies only in exceptional situations and generally only where the named plaintiff can make a reasonable showing that he will again be subject to the alleged illegality. *City of Los Angeles v. Lyons*, —— U.S. ——, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

■ Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing present adverse effects. *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974).

■ Here the request for injunctive relief is based on the possibility that the plaintiff will be subjected to a future unconstitutional sentence which might be imposed by the defendant judge. This potential threat is not sufficiently real and immediate to show an existing case or controversy. *City of Los Angeles v. Lyons*, —— U.S. ——, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

■ Absent a sufficient likelihood that he will again be wronged in a similar way the plaintiff is no more entitled to an injunction than any other citizen; and a federal court may not entertain a claim by any or all citizens who do no more than assert that certain practices of a state court judge are unconstitutional. *Id.*, 103 S.Ct. at 1670.

■ Likewise, the threat that the plaintiff may again be subject to an illegal sentence by the defendant judge does not create the actual controversy that must exist for a declaratory judgment to be entered. *Id.*, 103 S.Ct. at 1666; *Golden v. Zwickler*, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969).

■ The test to be applied in determining whether a case presents an actual controversy within the meaning of the Declaratory Judgment Act is whether there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941). The existence of the essential elements for declaratory relief, including the existence of a "controversy," should be determined as of the time of the court's hearing, rather than at the commencement of the action. *Golden v. Zwickler*, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). There must be a substantial controversy between parties having real, adverse interest at the time the court is prepared to render judgment. *Preiser v. Newkirk*, 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975).

■ The plaintiff must have standing to maintain this action. In its constitution-

al dimension, standing imports justiciability; that is, whether the plaintiff has made out a case or controversy within the meaning of the Constitution. As an aspect of justiciability, the standing question is whether the plaintiff has alleged such a personal stake in the outcome of the controversy to warrant his invocation of federal court jurisdiction and to justify the exercise of the court's remedial powers on his behalf. *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

This is not a criminal case and under our federal form of government the Indiana judicial system, and ultimately the Indiana Supreme Court, is entitled to correct problems in its own house.[2] Until that system has shown an unwillingness or inability to do so federal courts should not intervene in the absence of grave and immediate irreparable injury.

■ As Justice White stated in the *Los Angeles* case 103 S.Ct. at page 1670:

Recognition of the need for a proper balance between state and federal authority counsels restraint on the issuance of injunctions against state officers engaged in the administration of the state's criminal laws in the absence of irreparable injury which is both grave and immediate.

With regard to the plaintiff's claims for equitable relief, based on violation of federal constitutional provisions, plaintiff has no standing and has failed to present a case or controversy. This Court is without jurisdiction to provide a declaratory judgment, injunctive relief or award attorneys' fees in connection therewith. Again any claims

against the remaining defendants who are county officials is derivative of the claim against the defendant judge. This court is likewise without jurisdiction as to the claims against the county officials.

■ Turning next to the issue of damages under 42 U.S.C. § 1983, and an award of attorneys' fees therefor, the case of *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1979), controls. Judges acting within their judicial capacity, as in the case at bar, are absolutely immune from liability. The defendant Judge Anderson admits a mistake was made in not conducting an indigency determination with regard to the plaintiff. Further he should have been alerted to the problem after he learned the bond which was to be used to satisfy the fine and costs had been withdrawn.

■ The plaintiff's incarceration for failure to pay fine and costs was improper and cannot be condoned. Indeed, non-monetary sanctions against the defendant judge are available through the state court disciplinary system. *See:* Indiana Rules for Admission to the Bar and the Discipline of Attorneys, Rule 25: Complaints Against Justices and Judges; Indiana Code of Judicial Conduct, Canon 2(A). Nevertheless, it is clear that Judge Anderson cannot be held liable for damages in that he was carrying out a judicial act under his jurisdictional grant.

■ The defendant sheriff and warden have no choice under Indiana law but to carry out the order of a judge when

---

**2.** Initially there was available to the plaintiff post-conviction relief. Rule PC 1, Section 1, of the Indiana Rules of Procedure for Post-Conviction Remedies provides:

Any person who has been convicted of, or sentenced for, a crime by a court of this state, and who claims:

(1) that the conviction or the sentence was in violation of the Constitution of the United States or the constitution or laws of this state;
. . . .
may institute at any time a proceeding under this Rule to secure relief.

Once the plaintiff began serving the illegal sentence there was available the state habeas corpus remedy under Indiana Code § 34–1–57–1. That section provides:

Every person restrained of his liberty, under any pretense whatever, may prosecute a writ of habeas corpus to inquire into the cause of the restraint, and shall be delivered therefrom when illegal.

Under either of the foregoing provisions appellate remedies are available.

that judge is acting in his judicial capacity in a matter over which he has jurisdiction. To require the sheriff or warden to investigate each order of commitment by a judge and to independently determine if the sentence was legally imposed would be absurd. Here when carrying out a direct order of a court, the sheriff and warden enjoy the immunity afforded the committing judge.

The remaining defendants, who are county officials, were not involved in the allegations of wrongful imprisonment and were apparently added to insure recovery of any damage award.

Based on the immunity afforded judges acting in their judicial capacity, the derivative immunities accruing to the sheriff and warden and the lack of any culpable conduct by the remaining defendants, there remains no genuine issue of any material fact. Defendants are entitled to judgment as a matter of law in their favor on the issue of damages.[3]

Finally the Court addresses the issue of class certification. Pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, the plaintiff has requested that the Court certify a class in this action consisting of:

> All indigent persons who are or will be committed by the courts in Lake County to the Lake County Jail because of their inability to pay fines and costs.

■ A plaintiff has the burden of proving that a case is appropriately a class action and failure to meet any one of the requirements of Rule 23 precludes certification of a class. *Valentino v. Howlett,* 528 F.2d 975, 978 (7th Cir.1976).

■ Aside from other considerations the named plaintiff must show the existence of a "class" and that he is a member of the "class". *Simer v. Rios,* 661 F.2d 655, 669 (7th Cir.1981), *cert. denied,* 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982); *Adashunas v. Nagley,* 626 F.2d 600, 603 (7th Cir.1980); *Midwest Community Council, Inc., v. Chicago Park District,* 87 F.R.D. 457 (N.D.Ill.1980); *See also:* Wright & Miller, *Federal Practice & Procedure:* Civil §§ 1760 and 1761.

■ No class has in fact been shown to exist. No indigent persons are presently incarcerated in the Lake County Jail by the defendant Judge Anderson because of an inability to pay fines and costs. At the time of the hearing, the plaintiff was not an inmate in the Lake County Jail since he had been previously released.[4] The named plaintiff must be a member of the class which he seeks to represent at the time that the class is certified by the district court. *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). Certification of a class action is improper where certification takes place after the proposed class representative is no longer a member of the proposed class. *Holt v. Moore,* 541 F.2d 460 (4th Cir.1976).

■ With regard to that portion of the purported class which relates to indigent persons who "will be committed", if the named plaintiff purporting to represent the class fails to establish the requisite case or controversy he may not seek relief for any other member of the class. *O'Shea v. Littleton,* 414 U.S. 488, 495, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974). The named plaintiff, Walter Zuranski, has not shown the

3. Although defendants sought dismissal pursuant to Rule 12(b)(6) matters outside the pleadings were presented and received by the court. Thus the motion to dismiss regarding the issue of damages is treated as one for summary judgment.

4. There are apparently four indigent inmates who are presently serving regular sentences handed down by the former judge of the Gary, Indiana, City Court. There is a possibility, based on their commitment orders, that when their regular sentences are concluded imprisonment for failure to pay their fines could occur. Each of these defendants has several months more to run on their regular sentences. The former judge of the Gary City Court, Douglas Grimes, is not named as a defendant in this action. Further, sufficient time exists for appropriate state action to avoid the potential illegal incarceration.

**110**

requisite case or controversy and is not a proper class representative.

■ Further, a conclusory allegation, as in this case, that a class is so numerous that joinder is impracticable is not sufficient to meet the requirements of Rule 23(a)(1). *Valentino v. Howlett*, 528 F.2d 975, 978 (7th Cir.1976).

Plaintiff has *failed* to show: (1) the existence of a proper class;[5] (2) that the named plaintiff is a proper class representative; and (3) that the numerosity requirement in Rule 23(a)(1) has been met. Simply stated plaintiff has failed to meet class certification requirements and class certification must be denied.

The Court now expresses concern with this case because prompt action by counsel for Project Justice and Equality could have avoided the imprisonment of the plaintiff for failure to pay fine and costs. There was sufficient time from the initiation of plaintiff's contact with Project Justice and Equality until plaintiff began serving his sentence for failure to pay fine and costs for counsel to have secured plaintiff's release through state post-conviction relief. Furthermore, Project Justice and Equality could have sought plaintiff's release from custody through a state court writ of habeas corpus after January 19, 1984, yet the plaintiff continued to remain in jail for seven additional days—until the filing of this case in federal court. The early release of the plaintiff was apparently perceived as depriving Project Justice and Equality of a purported class representative.

Project Justice and Equality, through its attorneys and law student interns, carries out a valuable service in seeking to protect the rights of citizens in northern Indiana. Its intentions and goals are laudable. However, the pressure to advance important issues by the impact of class action can serve to subvert the rights of a single individual. This case is an example.

■ Having accepted the responsibility to represent Mr. Zuranski individually (as well as putting him forth as a class representative) the attorneys for Project Justice and Equality had the obligation under the Code of Professional Responsibility to place his individual interests above those of any "class" considerations. *See:* Indiana Code of Professional Responsibility, DR 7–101, Representing Client Zealously.

Here the legal system failed not only because of a judge's indifference to Mr. Zuranski's rights, but also because his legal counsel treated his personal liberty as secondary to the greater goal of achieving the impact of a class action.

This is an important consideration that Project Justice and Equality must examine in any future request for class certification.

In accordance with the foregoing findings:

The Court DISMISSES plaintiff's individual claim based on violation of state law for lack of federal jurisdiction;

The Court DISMISSES plaintiff's individual claim for equitable relief based on federal question for lack of jurisdiction;

The Court GRANTS SUMMARY JUDGMENT in favor of all defendants and against the plaintiff on the issue of plaintiff's claim for damage; and

The Court DENIES class certification.

---

**5.** Additionally, the purported class is referred to as all indigents committed by "the courts in Lake County" and therefore includes many courts other than that of the named defendant Judge Anderson.