China Ann LONG, Appellant–Plaintiff,

v.

Phillip BARRETT, Individually; Richard Davidson, Individually; John K. White, Individually; Deena Pattingill, Individually; an Unnamed Police Officer of the City of Columbus, Individually, Appellees–Defendants.

No. 49A02–0312–CV–1017.

Court of Appeals of Indiana.

Nov. 10, 2004.

Nathaniel Lee, Esq., Lee, Burns, Cossell & Kuehn, LLP, Indianapolis, IN, Attorney for Appellant.

Anthony Overholt, Shelese Woods, Office of Corporation Counsel, Indianapolis, IN, Attorneys for Appellees, Phillip Barrett and Richard Davidson.

Douglas A. Hoffman, Miller Carson Boxberger & Murphy, LLP, Bloomington, IN, Attorney for Appellees, John K. White and Deena Pattingill.

## OPINION

DARDEN, Judge.

### *STATEMENT OF THE CASE*

China A. Long ("Long"[1]) appeals the trial court's order granting summary judg-

---

**1.** Long's husband, Willie Long, was also a plaintiff in this action, asserting a derivative claim of loss of consortium. On August 18, 2004, Long filed a motion for leave to amend

ment to Phillip Barrett, Richard Davidson, John K. White and Deena Pattingill (collectively, "the defendants") on Long's amended complaint, which alleged that each was individually liable for having falsely arrested and falsely imprisoned her and being negligent.[2]

We affirm.

## ISSUE

Whether the trial court erred in granting summary judgment.

## FACTS

Stated in the light most favorable to Long, the facts are as follows. In 1991, a woman named China G. Long,[3] employed through Kelly Services at Toyota Industrial Equipment in Columbus, was accused of forging her supervisor's signature on a time card and collecting $287.86 in unearned wages. On June 2, 1992, Bartholomew Superior Court issued a warrant for the arrest of "China G. Long," SSN ***–**–***, on the charge of forgery in cause number 03D01–9205–CF–265.[4] (App. 122, "Warrant # 1"). Warrant # 1 indicated neither a date of birth nor an address for China G. Long.

On November 3, 2000, with this same 1992 cause number, a bench warrant was apparently re-issued[5] by Bartholomew Superior Court for "China Long," at 3805 Devon Drive in Indianapolis, with a birth date of June 20, 1959, and SSN ***–**–*** (as in Warrant # 1) for "failure to appear." (App. 123, "Warrant # 2"). Warrant # 2 differed in that it omitted the middle initial "G"; it added an address and a birth date; it was for a charge of failure to appear instead of forgery; and it had a bond fixed at $50,000 (the bond indicated on Warrant # 1 was $750).

Hence, the respective warrants contained the following information:

| Warrant # 1 | Warrant # 2 |
|---|---|
| China G. Long | China Long |
| SSN ***–**–*** | SSN ***–**–*** (same as # 1) |
| Forgery—$750 bond | Failure to Appear—$50,000 bond |
| | 3805 Devon Dr. |
| | Indianapolis IN |
| | DOB 6/20/59 |

On the morning of November 27, 2000, Marion County Sheriff's Department Deputies Barrett and Davidson sought to arrest China A. Long, whose birth date is June 20, 1959, at her home at 3805 Devon Drive, Indianapolis. Long informed the deputies that there must be a mistake because she had not committed a crime, her Social Security Number was different than that on the warrant, and she had never worked in Columbus.[6] Neverthe-

---

her complaint to reflect the death of Willie Long, and we granted the motion on August 23, 2004.

2. We heard oral argument on this matter on September 17, 2004. We thank counsel for their presentations.

3. Long's amended complaint alleges that China G. Long was Caucasian. Because Long did not provide us with any answers filed by the defendants, we do not know whether this allegation was admitted. Long directs us to no designated evidence indicating China G. Long's race.

4. Long's amended complaint also alleges that China G. Long, *with a birthdate of May 1,*

*1959 and the SSN ***–**–***, was charged with the offense on May 28, 1992* and that it was "believed that said China R. [sic] Long *was not an African–American."* (App. 59). Again, the defendants' answers in this regard are unknown to us, and these three allegations are not supported by designated evidence.

5. The Bartholomew County bench warrant form contains a block to indicate a "Re-Issued Warrant," but authorities did not check that block.

6. Long's brief asserts that she "attempted to inform police of the mistake by showing that her Indiana Driver's License bore the Social Security Number of __–__–__" and that the

less, Barrett and Davidson proceeded with the arrest and transported Long to the Marion County Jail.

The next day, November 28, 2000, Bartholomew County Sheriff's Department Deputy White transported Long from the Marion County Jail to the Bartholomew County Jail in Columbus.[7] Long told White that there had been a mistake. On November 29, 2000, Mr. Long posted bond for his wife, and she was released. Subsequently, the charges were dismissed.

On October 15, 2001, Long filed a complaint in Marion County Superior Court. On November 13, 2001, the case was removed to the United States District Court for the Southern District of Indiana based on its allegations under 42 U.S.C. § 1983. On February 26, 2002, Judge Tinder dismissed her complaint. His order found that as to the § 1983 claims against Barrett, Davidson, White, and Pattingill, "the alleged conduct does not set out a constitutional violation," (App. 51), and dismissed those claims with prejudice. He noted that the complaint "implie[d] that [the defendants] were acting within the scope of employment," (App. 51), but dismissed without prejudice the state law claims against the above defendants.

On March 7, 2002, Long filed an amended complaint in the Federal District Court seeking damages "pursuant to the common law of the State of Indiana." (App. 57). She alleged in one count that Barrett, Davidson, White and Pattingill had "committed the intentional torts of false arrest and false imprisonment," and in another count that they "negligently and carelessly altered the warrant for the arrest of a criminal named China R. [sic] Long, which mistake transformed the innocent China Ann Long into a fleeing felon." (App. 57, 58). Long further alleged that the officers had "falsely arrested and falsely imprisoned" her, which "acts and omissions . . . were malicious, willful and wanton." (App. 65).[8] She also alleged that Barrett, Davidson, White, and Pattingill were "duly appointed police officers of" the sheriff's departments who had failed to undertake "even a small, cursory investigation," [9] and that although the officers "knew they had arrested an innocent person," they "failed to take steps to remedy the misidentification." (App. 58, 62, 63, 64). She incorporated by reference these factual allegations as supporting her claim that the officers had "negligently and carelessly altered the arrest warrant for China R. [sic] Long." (App. 67). Apparently, the Federal District Court remanded the amended complaint to Marion County Superior Court for consideration of Long's state law claims.

---

"Social Security Number appearing on China A. Long's Indiana Driver's License differed drastically from that which appeared on the warrant." Long's Br. at 4. The designated evidence simply indicates that Long showed her license to the officers. There is no designated evidence indicating that her Social Security Number was on the license.

7. Long's amended complaint alleged that Deputies White and Pattingill transported her to Columbus. In her Statement of Facts, Long does not mention Pattingill at all. In Pattingill's memorandum to the trial court in support of summary judgment, Pattingill cited evidence indicating that White alone transported Long. (App. 71). In her appellate brief, Pattingill denies that she was involved in transporting Long. White & Pattingill Br. at 1. Long cites no designated evidence indicating any role by Pattingill in Long's detention.

8. The allegation that the officers' "acts and omissions . . . were malicious, willful and wanton" was new to the amended complaint.

9. The amended complaint dropped the original complaint's § 1983 allegation that the officers were "acting under color of" state and local law. (App. 30, 31).

On October 9, 2002, White and Pattingill filed a motion for summary judgment. They argued that because Judge Tinder's order held that their actions were within the course and scope of their employment, she could not reargue that issue; that Long could not establish that her arrest was false or unlawful; that her claims were barred by the defense of good faith; that they were shielded by judicial and quasi-judicial immunity; that her claims were barred by common law immunity; and that immunity pursuant to the Indiana Tort Claims Act shielded them from her negligence claim. In support of their motion, White and Pattingill designated "all pleadings,"[10] Judge Tinder's order, and Long's deposition. (App. 69). Barrett and Davidson later joined in the motion for summary judgment.

Long filed a memorandum in opposition to summary judgment, and she designated the amended complaint, Warrant # 1, Warrant # 2, and an affidavit of "Dennis Knulf."[11] (App. 112(a)). A deposition of Marcia Rexroat, a legal assistant in the office of the Bartholomew County prosecutor, was also submitted.

On June 26, 2003, the trial court heard argument on the summary judgment motion. On September 29, 2003, the trial court granted the motion.

On October 24, 2003, Long filed a motion to reconsider. The trial court denied Long's motion, and Long brings this appeal of the trial court's grant of summary judgment.

■ As noted in the footnotes, certain factual assertions in Long's appellate brief are not supported by designated evidence. In addition, although her appendix contains the depositions of Deputies Barrett and Davidson, these were not designated as evidence to the trial court. We remind Long that it is the evidence specifically designated to the trial court that we consider upon review of an appeal challenging the grant of summary judgment, *see* *Hughes v. King*, 808 N.E.2d 146, 148 (Ind. Ct.App.2004), and it is the appellant's burden to present this court with a record sufficient to sustain her argument. *Purdy v. State*, 708 N.E.2d 20, 23 (Ind.Ct.App. 1999). An appellant's failure to do so subjects her appeal to a dismissal. *See* *Hughes*, 808 N.E.2d at 148. Here, we choose to address Long's arguments because they raise concerns that we find to merit discussion.

## *DECISION*

■ In an appeal involving summary judgment, the appealing party bears the burden of persuasion, and we assess the trial court's decision to ensure that the parties were not improperly denied their day in court. *Shambaugh & Son, Inc. v. Carlisle*, 763 N.E.2d 459, 460 (Ind.2002). However, we analyze the issues in the same way as a trial court would. *Id.* at 461. Specifically, summary judgment is appropriate only where the designated evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Worman Enterprises v. Solid Waste Mgmt.*, 805 N.E.2d 369, 373 (Ind.2004). A grant of summary judgment may be affirmed on any theory supported by the designated materials. *Schaefer v. Kumar*, 804 N.E.2d 184, 191 (Ind.Ct.App.2004), *trans. denied.*

10. As already indicated, "all pleadings" are not contained in Long's Appendix. Only her original and amended complaints are provided.

11. Knulf's affidavit is not part of Long's Appendix.

Long heatedly argues summary judgment should not have been granted because there is a genuine issue of material fact as to the conduct of Deputies Barrett and Davidson. According to Long's deposition, she acknowledged that the deputies were strangers to her; thus, there is no designated evidence that would support the inference of their having any personal animus against her. Further, except for the alleged discrepancy of a Social Security Number, it is undisputed that there were significant identifiers in Warrant # 2 that specified Long as the China Long therein. Long lived at the address indicated in Warrant # 2 and had for three years. Long's date of birth was the same as that shown in Warrant # 2.

Nevertheless, Long contends that when Deputies Barrett and Davidson arrived at her home to execute the bench warrant, and she told them that there was a mistake, they should have undertaken further investigation as to the proper identity of the China Long sought by Bartholomew County. At oral argument, she pressed this contention by referring to her deposition testimony, which she characterized as containing her testimony that she had seen the word "forgery" on the warrant at the time of her arrest, thus supporting the inference that Warrant # 1 was in the possession of Deputies Barrett and Davidson; and because there were major differences between Warrant # 1 and Warrant # 2, the deputies should have been put on notice that there was a problem. We have reviewed Long's deposition testimony in this regard. Long initially testified that she was shown a warrant that indicated a charge of forgery, which would indicate Warrant # 1; but, in later testimony, she clearly identified Warrant # 2 as the warrant shown to her and affirmed that Warrant # 2 contained her name, address, date of birth and a Social Security Number. Thus, Long's argument as to the warrant possessed and executed by deputies does not support the inference that there was a basis for a heightened awareness on the part of the deputies as to the propriety of the warrant.

Long also claims that in this case—where (1) the individual is found in her own home, (2) the warrant on its face appears to refer to a court action filed some eight years earlier, and (3) there are no exigent circumstances involved in executing the warrant—public policy would be better served by a procedure providing for further investigation. Long specifically directs our attention to the very real fact that identity theft is a major concern of growing import. We appreciate that this is indeed the case. In reviewing the statutory requirements for an arrest warrant, we find that both warrants here comply with the statute. *See* Ind.Code § 35–33–2–2. However, the matter was last addressed by our legislature in 1981, and the current statute provides that unless the person's name "is unknown," the warrant need only "specify the name of the person to be arrested." *Id.* at (a). In light of widespread concerns about identity theft, we would encourage the legislature to revisit the statute and consider adding a requirement that *where possible,* physical identification information (race, height, weight, visible scars, etc.) be included along with the name of the person to be arrested.

In a separate vein, we would encourage law enforcement entities to consider establishing a policy whereby in a case with facts such as these (*i.e.,* where the individual is located in her own home, the warrant relates to a matter filed years ago, and there is no emergency), officers would undertake a cursory investigation before taking the subject to jail.

Finally, we strongly admonish the various personnel involved in drawing up arrest warrants to keep in mind that they are setting in process a mechanism whereby a citizen may be improperly deprived of personal freedom and liberty. This is not a task to be undertaken lightly, and the ultimate consequence should never be forgotten in workplace haste or everyday routine. One cannot help but regret the errors that were made herein, and the loss suffered in such an instance is not only that of Long but of the judicial system as a whole.

■■■■ *Bushong v. Williamson*, 790 N.E.2d 467, 472 (Ind.2003), explained that pursuant to the current Indiana Tort Claims Act, governmental employees who act within the scope of their employment are immune from liability. Thus, the Act "allows government employees acting in the scope of their employment the freedom to carry out their duties without the fear of litigation." *Id.* When the employee's conduct is " 'of the same general nature as that authorized, or incidental to the conduct authorized,' " it is "within the scope of employment." *Id.* (quoting *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 453 (Ind.2000)). Whether certain acts of an employee are within the scope of employment "may be determined as a matter of law" if the designated materials conclusively demonstrate. *Id.* Further, to bring an action against the employee personally, there must be (1) an allegation that the "act or omission of the employee" is either (a) malicious or (b) willful and wanton, and (2) the complaint "must contain a reasonable factual basis supporting the allega-

tions." I.C. § 34–13–3–5(b). Here, Long's factual allegations as to the conduct of the defendants do not reflect any conduct that can be reasonably found to be "malicious" or "willfull and wanton." Deputies Barrett and Davidson were simply executing a facially valid bench warrant; and there are no allegations or designated evidence that would support the inference of any behavior that could be characterized as being malicious or willful and wanton conduct by Deputies White and Pattingill, as well. Further, all evidence as to the conduct of the deputies supports the reasonable inference that it entailed tasks undertaken in the scope of their employment with the respective sheriff's departments.[12] Therefore, the Act immunizes the defendants from liability for such conduct, and the trial court did not err in granting defendants' summary judgment motion on this basis.[13]

In addition to immunity under the Tort Claims Act, the trial court also found the defendants to be shielded by the doctrines of judicial and quasi-judicial immunity. In *Grant County Comm'rs. v. Cotton*, 677 N.E.2d 1103 (Ind.Ct.App.1997), *trans. denied*, we reviewed a series of precedents to support our holding that the Grant County Sheriff was entitled to immunity in an action for wrongful arrest inasmuch as the sheriff was exercising a judicial function. We cited *Stine v. Shuttle*, 134 Ind.App. 67, 186 N.E.2d 168, 172 (1962) ("warrant not void on its face issued by a tribunal having general jurisdiction of the subject matter is a protection to the officer executing it, and the officer is not required to look beyond the process or warrant or deter-

12. Even though Long's appellate argument does not appear to press any further claims as to Deputies White and Pattingill, the scant designated evidence as to their conduct supports the inference that such was within the scope of their employment.

13. We find no factual allegations, no designated evidence, and no argument as to any of the defendants having "negligently and carelessly altered the warrant for the arrest of a criminal named China R. [sic] Long." (App. 58).

mine the validity or regularity of the proceedings on which it is founded"); *Elzey v. Archer*, 500 N.E.2d 1253 (Ind.Ct.App. 1986), *cert. denied* 484 U.S. 1008, 108 S.Ct. 704, 98 L.Ed.2d 655; *Zuranski v. Anderson*, 582 F.Supp. 101, 108–9 (N.D.Ind.1984) (sheriff has "no choice under Indiana law but to carry out the order of a judge when that judge is acting in his judicial capacity in a matter over which he has jurisdiction"). Specifically, we held that the sheriff was entitled to immunity for actions taken in detaining the plaintiff "until the validity of the arrest warrant could be ascertained." *Grant County Comm'rs.*, 677 N.E.2d at 1105. As in *Grant County Comm'rs.*, Deputies Barrett and Davidson were executing a warrant that was not facially void; they were not required to look beyond the face of the warrant as to its propriety; and they had no choice but to execute the warrant as ordered by the Bartholomew Superior Court.

■■ In addition to the absolute judicial immunity afforded to a judge for "all actions taken in the judge's judicial capacity," *Newman v. Deiter*, 702 N.E.2d 1093, 1097 (Ind.App.1998), *trans. denied, cert. denied* 528 U.S. 931, 120 S.Ct. 329, 145 L.Ed.2d 257, such "absolute judicial immunity extends to persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Id.* at 1100. Thus, when a deputy sheriff is acting in furtherance of the judge's order, the "absolute judicial immunity afforded [that judge]" extends to the deputy "for those acts in furtherance of the judge's orders." *Id.*

■ Accordingly, the trial court did not err in granting the defendants summary judgment on the basis of judicial or quasi-judicial immunity.

We affirm.

SHARPNACK, J., concurs.

ROBB, J., concurs with separate opinion.

ROBB, Judge, concurs with separate opinion.

I respectfully concur in the majority's result, but write separately to highlight the dangers posed by identity theft. An identity theft survey report conducted by the Federal Trade Commission in 2003 discovered that within the previous year, almost ten million Americans learned that they were the victim of some form of identity theft. Federal Trade Commission—Identity Theft Survey Report at 4 (Sept. 2003), *available at* http://www.ftc.gov/os/2003/09/synovatereport.pdf. Although this case centers more on misidentification, it does illustrate the dangers posed by identity theft when executing an arrest warrant. It seems quite possible that a victim of identity theft could find herself arrested pursuant to a seemingly valid arrest warrant for actions committed by the individual who stole her identity. The likelihood of something like this occurring is heightened by our current statute, which only requires that a warrant "specify the name of the person to be arrested." Ind.Code § 35–33–2–2(a). For instance, let us assume that someone has stolen my identity and committed a crime in my name. Under Indiana Code section 35–33–2–2, the State could obtain a valid warrant for my arrest by providing no more information than my name. The police then could arrest me for a crime that I did not commit, and I likely would not be able to recover any compensation for the loss of my freedom because there was nothing to suggest to the police officers that the arrest warrant was anything but valid. For this reason, I fully agree with the majority's recommendation that the

legislature revisit Indiana Code section 35–33–2–2 and consider adding further requirements like physical identification information.

Furthermore, I believe the majority properly admonishes the various personnel involved in drawing up the arrest warrant here. The errors in this arrest warrant are gross, and force one to wonder how and why this warrant was even issued. Mistakes such as this tend to undermine the entire judicial system.

Although I agree with the majority's conclusion that the officers' actions here were not willful, wanton, or malicious, I believe a question left unanswered by this opinion is how many problems must there be with an arrest warrant before a police officer's enforcement of that warrant moves from being merely negligent to willful, wanton, or malicious. This is, of course, a problem of line drawing. However, if Long had shown that the social security number on the second warrant was incorrect, that the birth date on the second warrant was incorrect, and that the officers had in their possession both the first and second warrants, would that have been sufficient evidence to show that the officers had acted willfully, wantonly, or maliciously? Would some combination of only two of these facts or even one of these facts standing alone been sufficient to show willful, wanton, or malicious conduct? Nevertheless, because the trial court properly granted summary judgment, I concur with the majority opinion.