**Marilyn JONES, Plaintiff,**

v.

**Dick W. BOWMAN, Office of Sheriff of Elkhart County, In., Stephen E. Platt, Unknown Members of the Elkhart Superior Court Staff, Defendants.**

No. S87–289.

United States District Court, N.D. Indiana, South Bend Division.

Aug. 26, 1988.

Stephen G. Drendall, South Bend, Ind., Richard A. Waples, Indianapolis, Ind., for plaintiff.

John D. Ulmer, Goshen, Ind., for defendants.

David A. Arthur, Deputy Atty. Gen., Indianapolis, Ind., for Stephen E. Platt.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause is before the court on cross-motions for summary judgment, Fed.R. Civ.P. 56, on the plaintiff's claim for damages and injunctive and declaratory relief based on her week-long detention on a civil body attachment and the strip search to which she was subjected when taken into custody at the Elkhart County Jail. Jurisdiction is vested pursuant to 28 U.S.C. § 1343.

The plaintiff brings this action against a past sheriff, the present sheriff, unnamed county court employees, and a superior court judge. One defendant, Judge Stephen Platt, has not sought summary judgment, and summary judgment was not sought against him. The parties agreed to a dismissal with respect to Judge Platt at a telephonic conference held on August 26, 1988.

For the reasons set forth below, the court concludes that each motion must be granted in part. The court concludes that the Office of Sheriff of Elkhart County is not a proper party for suit; that the strip search violated the plaintiff's Fourth Amendment rights; that genuine issues of fact exist with respect to the existence of a county policy concerning strip searches of pretrial detainees and with respect to the plaintiff's punitive damages claim; that the former county sheriff is entitled to judgment as a matter of law on the plaintiff's claim that the length of her detention violated her constitutional rights; that the moving defendants are entitled to summary judgment on the claims for injunctive and declaratory relief (although the plaintiff remains free to claim to be a "prevailing party" for purposes of a fee award based on post-filing policy changes); that the present sheriff is entitled to judgment on

all claims other than the official capacity claim based on the strip search; that the former sheriff is immune from liability on the pendent state false imprisonment claim; and that the facts alleged do not state a pendent invasion of privacy claim.

### I. The Plaintiff's Claims

In this action pursuant to 42 U.S.C. § 1983, Marilyn Jones alleges that her Fourth and Fourteenth Amendment rights were violated when, after being admitted to the Elkhart County Jail pursuant to a body attachment issued by Elkhart Superior Court Judge Stephen Platt, she was strip searched and subsequently detained for seven days before being taken to court. Ms. Jones sues former Elkhart County Sheriff Dick Bowman, present Elkhart County Sheriff Randy Yohn[1], Judge Stephen Platt, and unknown staff members of the Elkhart Superior Court. Sheriffs Bowman and Yohn and Judge Platt were sued in their official as well as individual capacities. In addition to her federal claims under § 1983, Ms. Jones alleges that the strip search and detention constituted an invasion of privacy and false imprisonment under Indiana state law. Ms. Jones seeks equitable and declaratory relief as well as compensatory and punitive damages.

The court denied Ms. Jones' motion for a preliminary injunction on June 17, 1987 and her motion for class certification on April 8, 1988.

### II. Undisputed Facts

On September 23, 1985, the Sheriff of Johnson County, Indiana arrested Ms. Jones on a body attachment that Judge Platt had issued.[2] On September 25, 1985, Ms. Jones was picked up in Johnson County by Elkhart Sheriff's deputies and admitted to the Elkhart County Jail. Upon her arrival at the Elkhart County Jail, Ms. Jones was frisked by a female officer, which in-

---

1. The plaintiff was granted leave to amend her complaint to add Randy Yohn, the current Sheriff of Elkhart County, on November 13, 1987. Sheriff Yohn was elected Sheriff in November of 1986.

2. Judge Platt issued the body attachment because Ms. Jones failed to appear in his court on a rule to show cause why she should not be held

in contempt for failure to obey the court's prior orders. Ms. Jones was involved in a custody dispute with her former husband. When Ms. Jones failed to appear for the show cause hearing on May 7, 1984, Judge Platt issued the body attachment. On September 23, 1985, the Sheriff of Johnson County, Indiana arrested Ms. Jones on the body attachment.

cluded patting down Ms. Jones' chest, buttock area and crotch. Ms. Jones was fingerprinted and photographed and read the warrant.

She then was taken to the women's ward, where a female deputy checked her hair, mouth and ears. The female deputy instructed Ms. Jones to step into the shower, remove her clothes and give her clothes to the deputy. Ms. Jones was instructed to lift each of her breasts, turn around and squat three times. No items of contraband or weapons were found; Ms. Jones had not been suspected of concealing such items.

According to the defendants, Ms. Jones arrived at the Elkhart County Jail at 2:10 p.m. on September 25, 1985; at 3:05 p.m., the court was notified that she was in custody. Ms. Jones was taken to court on October 2, 1985, seven days after her arrival at the Elkhart County Jail and nine days after her apprehension.

The strip search policy in effect at the time Ms. Jones' strip search occurred was as follows:

.04 STRIP SEARCH

A. An officer may have a person strip searched if he believes it is in the interest and safety and security of the officers and other inmates, or he believes the subject is concealing some item by finding only part of an item or the action of the person being searched. Strip Searches will not ordinarily be conducted unless the person is processed for long term holding.

B. Male officers will handle male inmates and female officers the female inmates at all times in a strip search situation. Extreme caution should be exercised before deciding to conduct a strip search. Such searches will be handled in a dignified manner.

C. The inmate will be taken to a contained area, preferably a rest room and asked to remove all clothing. The clothing is searched thoroughly. Keep in mind that cuffs, collars, and seams of clothing are good hiding places for contraband. The subject's shoes will be searched inside and out. Be on the watch for false heels and soles as well as the material used for shoestrings.

D. Have the subject face you and put arms straight out at shoulder level. Search hair with your fingers and have subject open mouth. Use wooden tongue depressor to check mouth cavity. Also search nostrils as drugs can be hidden there. Be careful not to stick fingers in the subject's mouth where they can be bitten. Check the armpit area. Have subject turn around and bend over and grab his ankles. Use flashlight to inspect the rectal area. Check the scrotum as some contraband can be concealed around the area under the penis. Check the bottom of the feet.

E. After you are certain the subject has not [sic] contraband return the clothing to the subject and have him get dressed.

F. NOTE: Be careful if you let the subject remove his own belt. There are small belt buckle knives that look like belt buckles. The wallet can contain a cleverly concealed firearm. There are gun wallets made and sold to the general public. Hair picks may be camouflaged as razor or dagger instruments which look completely innocent at a glance.

.05 EXCEPTIONS TO REQUIREMENT

Persons arrested for traffic offenses and booked into the jail will not be strip searched as a rule but will be frisk searched. Body cavity searches will be only on express permission of the Sheriff, Jail Commander or Jail Warden, and only for just cause.

\* \* \* \* \* \*

.02 STRIP SEARCH
(See GO: 51703.04)

The strip search for the female inmate is the same procedure as for males with the exception of certain body areas. Check the vaginal area while subject is bent over for the rectal search. A search under the breasts is required. It is possible for a female to have pouches surgically placed under the breasts. The pouch cannot be seen by quick observa-

tion. Instruct the subject to lift the breast for inspection.

On July 2, 1987, the Elkhart County Sheriff's Department instituted a new strip search policy which prohibits strip searches of individuals arrested on body attachments or other civil arrests "unless the officer has a reasonable belief the arrestee is concealing weapons or contraband on his or her person".[3]

Ms. Jones claims entitlement to judgment as a matter of law with respect to the search because the sheriff's personnel had no reasonable suspicion to believe that she was secreting weapons or contraband on her person and, therefore, the strip search violated the Fourth Amendment.

The defendants, other than Judge Platt (hereinafter referred to as "the moving defendants") assert that they are entitled to judgment as a matter of law on eight issues:

 (a) punitive damages;

 (b) that Sheriff Bowman did not cause Ms. Jones to be detained unlawfully at the Elkhart County Jail;

 (c) that Ms. Jones is not entitled to permanent injunctive or declaratory relief;

 (d) that Sheriff Yohn had no personal involvement in the actions giving rise to Ms. Jones' complaint;

 (e) that Ms. Jones' pendent state claims are barred for her failure to comply with the notice provisions of the Indiana Tort Claim Act;

 (f) that Sheriff Bowman is immune from a claim for false imprisonment;

 (g) that Ms. Jones' claim of invasion of privacy states no claim under Indiana law; and

 (H) that the defendants are immune against a claim for invasion of privacy pursuant to the Indiana Tort Claims Act.

## III. Analysis

A party seeking summary judgment must demonstrate that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(e); *Wilson v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 841 F.2d 1347 (7th Cir.1988); *Munson v. Friske*, 754 F.2d 683 (7th Cir.1985). If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis of the motion, the opponent must come forth with evidence to show what facts are in actual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Donald v. Polk County*, 836 F.2d 376 (7th Cir. 1988). A genuine factual issue exists only when there is sufficient evidence for a jury to return a verdict for the motion's opponent. *Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656 (7th Cir.), *cert. denied* — U.S. ——, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987). Summary judgment should be granted if no reasonable jury could return a verdict for the motion's opponent. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Anderson v. University of Wisconsin*, 841 F.2d 737 (7th Cir.1988).

When the parties do not dispute the factual basis of a motion for summary judgment, the reviewing court's only inquiry is whether judgment should issue as a matter of law. The burden of proof on this matter rests with the moving party. Summary judgment is inappropriate, however, if the parties disagree about inferences reasonably to be drawn from undisputed facts. *Bowyer v. United States Dept. of Air Force*, 804 F.2d 428 (7th Cir.1986).

When facts are disputed, the parties cannot rest on mere allegations in the pleadings, *Boruski v. United States*, 803 F.2d

---

**3.** .02 VISUAL STRIP SEARCH POLICY

 A. No visual strip searches shall be performed on persons arrested for traffic, regulatory, misdemeanor or juvenile offenses and body attachments or other civil arrests, unless the officer has a reasonable belief that the arrestee is concealing weapons or contraband on his or her person. Visual strip searches shall be performed only in accordance with the guidelines set forth in GO 51704.07 (no body cavity search will be conducted on such arrestees unless it is based on probable cause that weapons or contraband are being concealed and shall be performed only in accordance with the guidelines set forth in GO 51704.08).
(Exhibit A, Stutsman Aff.).

1421 (7th Cir.1986), or upon conclusory allegations in affidavits. *First Commodity Traders v. Heinold Commodities,* 766 F.2d 1007 (7th Cir.1985). The court must draw any permissible inferences from the materials before it in favor of the non-moving party, *Matsushita Electronics Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Vachet v. Central Newspapers, Inc.,* 816 F.2d 313 (7th Cir.1987), as long as the inferences are reasonable. *Davis v. City of Chicago,* 841 F.2d 186 (7th Cir.1988). A party need not try its case by affidavit, but it must set forth some facts from which the court can reasonably infer that the party would be able to produce some evidence at trial to support its theory. *Matter of Morris Paint and Varnish Co.,* 773 F.2d 130 (7th Cir.1985). The non-moving party must show that the disputed fact is material, or outcome-determinative, under applicable law. *Wainright Bank & Trust Co. v. Railroadmen's Federal Sav. & Loan Ass'n,* 806 F.2d 146 (7th Cir.1986).

The parties' summary judgment motions must be addressed with these standards in mind.

### A. Strip Body Searches

According to Ms. Jones, courts have found strip searches of pretrial detainees unreasonable and violative of the Fourth Amendment when conducted without reasonable suspicion to believe the detainee is secreting contraband or weapons on his or her person. Ms. Jones argues that she was strip searched pursuant to an official departmental practice of strip searching all pretrial detainees going into the general inmate population.

The defendants argue that the strip search was not unconstitutional because persons brought in on body attachments normally were not subjected to a strip search and that the strip search of Ms. Jones was inconsistent with jail policy.

### 1.

■ At the outset, the defendants question which party is targeted for Ms. Jones' summary judgment motion. The defendants assert that the Sheriff's Department may not be sued because it has no separate corporate existence. The defendants conclude that Ms. Jones directs her summary judgment motion at Sheriff Bowman, the Sheriff at the time of this incident.

A city's police department is merely a vehicle through which the city government fulfills its policy functions and is not a proper party defendant. *Boren By & Through Boren v. City of Colorado Springs,* 624 F.Supp. 474 (D.Colo.1985); *see Martinez v. Winner,* 771 F.2d 424, 444 (10th Cir.1985), *vacated on other grounds* 475 U.S. 1138, 106 S.Ct. 1787, 90 L.Ed.2d 333 (1986). The court can find no reason why the same conclusion would not apply to a county sheriff's department. Accordingly, the defendant Office of the Sheriff of Elkhart County is entitled to judgment as a matter of law.

■ To the extent that Sheriffs Bowman and Yohn are sued in their official capacities, however, Ms. Jones' suit is one against the county itself. *Kentucky v. Graham,* 473 U.S. 159, 165–166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); *Malak v. Associated Physicians, Inc.,* 784 F.2d 277 (7th Cir. 1986). Retention of the county sheriff's department as a defendant would be of no practical effect.

### 2.

■ By performing a strip search on Ms. Jones without reasonable suspicion, Elkhart County Sheriff Department personnel violated Ms. Jones' Fourth Amendment rights as a matter of law. The court does not operate in a vacuum in this area, for not only have other circuit and district courts addressed this issue, the guiding case comes from the Seventh Circuit Court of Appeals. *Mary Beth G. v. City of Chicago,* 723 F.2d 1263 (7th Cir.1983).

*Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), provides the legal standard governing a suspect's Fourth Amendment rights during strip searches or body cavity searches. Neither a prisoner nor a pretrial detainee leaves her constitutional rights outside the prison

walls. 441 U.S. at 545, 99 S.Ct. at 1877. Those constitutional rights at issue must be balanced against the need for prison security and safety of prison personnel against the constitutional right being infringed. *Id.* The *Bell* Court considered whether the Fourth Amendment protected pretrial detainees in New York's federal Metropolitan Correctional Center from such searches. The Court, after finding the searches to be reasonable, held the detainees' Fourth Amendment rights were not violated. The detainees in *Bell* were awaiting trial on serious federal charges after having failed to make bond and were searched after contact visits. 441 U.S. at 558–560, 99 S.Ct. at 1884–85.

The Fourth Amendment protects persons from unreasonable searches. The *Bell* Court formulated a two-pronged test to assist courts in determining reasonableness in strip search cases.

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it and the place it is conducted.

*Bell v. Wolfish,* 441 U.S. at 559, 99 S.Ct. at 1884.

In *Mary Beth G. v. City of Chicago,* 723 F.2d 1263, 1272, the Seventh Circuit adapted the *Bell* test to strip searches of pretrial detainees who are minor offenders, who are being detained for a short period of time, and who are not inherently dangerous. The court began its balancing of the privacy interests and governmental interests by noting the magnitude of the invasion of personal rights. Strip searches are "demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission ..." *Tinetti v. Wittke,* 620 F.2d 160 (7th Cir.1980), *quoting from Tinetti v. Wittke,* 479 F.Supp. 486 (E.D.Wis. 1979). Thus, there can be no more intrusive invasion of a citizen's privacy and dignity than the visual and genital searches conducted pursuant to a strip search. *Mary Beth G.,* 723 F.2d at 1272.

Against this invasion of personal privacy, the court balanced the governmental interest in conducting the particular searches in question. Maintaining "institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees ..." *Bell v. Wolfish,* 441 U.S. at 546, 99 S.Ct. at 1877. The *Mary Beth G.* court concluded that these concerns could not support a policy of strip searching all female detainees, even minor offenders entering the lockup for only a short time pending the posting of bail, particularly when the record showed minute discovery of contraband due to the searches.

The *Mary Beth G.* court held that "the more intrusive the search, the closer governmental authorities must come to demonstrating probable cause for believing that the search will uncover the objects for which the search is being conducted". 723 F.2d at 1273. The officials must base the strip search on specific objective facts and rational inferences they are entitled to draw from those facts in light of their experience. *McDonell v. Hunter,* 809 F.2d 1302, 1307 (8th Cir.1987) (a strip search conducted on prison correctional officers violated the Fourth Amendment). Without reasonable articulable grounds to suspect a pretrial detainee brought in on a minor charge is secreting contraband on their person, a strip search is unreasonable under the Fourth Amendment. 723 F.2d at 1273.

### 3.

Ms. Jones was brought to the jail because Judge Platt ordered a civil body attachment due to her failure to appear in court on a civil matter. The defendants have offered no evidence that could have caused any reasonable suspicion that Ms. Jones concealed any contraband or weapons, that she was dangerous to jail personnel or other inmates, or that jail safety was

jeopardized by the offense for which she was held.

Pat Hall, the jail matron who performed the search, stated that it was the policy of the Elkhart County Jail to perform a strip search when a woman was to be placed in the general inmate population, as Ms. Jones was to be,[4] regardless of the reason for which the woman inmate was being detained. (Hall Suppl.Dep., at 4–6). While this testimony is contested insofar as it asserts the existence of a departmental policy, it is unrebutted insofar as it establishes that no reasonable suspicion existed with respect to Ms. Jones. Essie Ellis, a jail matron and co-worker of Ms. Hall, also testified that strip searches were conducted on anyone going into general population, regardless of the offense or reasonable belief that the arrestee was concealing contraband or weapons. (Ellis Suppl.Dep., at 11–13).

■ That the search of Ms. Jones was done in a professional manner and in the presence of a person of the same sex does not affect the complete absence of reasonable suspicion to believe any contraband or weapons would be found on her person.

The court is persuaded by the weight of authority addressing the unreasonableness of such strip searches. *McDonnell v. Hunter*, 809 F.2d 1302 (8th Cir.1987) (strip searches without a reasonable suspicion that subjects are secreting contraband on their person violates the Fourth Amendment); *Stewart v. Lubbock County, Tex.*, 767 F.2d 153 (5th Cir.1985), *cert. denied* 475 U.S. 1066, 106 S.Ct. 1378, 89 L.Ed.2d 604 (1986) (strip searches of any arrestee, including minor offenders, with no reasonable suspicion that the offender might possess weapons or contraband violated the Fourth Amendment); *Jones v. Edward*, 770 F.2d 739 (8th Cir.1985) (strip search of an arrestee for violating a leash law violated the Fourth Amendment); *Mary Beth G. v. City of Chicago*, 723 F.2d 1263 (7th Cir. 1983) (strip searches of pretrial detainees arrested for misdemeanor offenses held awaiting the posting of bond violated the Fourth Amendment); *Logan v. Shealy*, 660 F.2d 1007 (4th Cir.1981) (strip search of DUI arrestee violated the Fourth Amendment).

Accordingly, the court, based upon the evidence, can find no genuine issue of material fact from which a jury could find the strip search conducted on Ms. Jones on September 25, 1985 could have been based on reasonable suspicion. The defendants have articulated no reasonable suspicion to lead them to have believed that Ms. Jones was secreting contraband or weapons. No reasonable jury, applying the law as it is stated, could find that Ms. Jones' Fourth Amendment rights were not violated. Ms. Jones is entitled to judgment as a matter of law on this issue.

### B. Liability

■ Ms. Jones asserts that she is entitled to judgment on the issue of liability against Elkhart County.[5] She premises this assertion on the practice of the Elkhart County Sheriff's personnel to conduct strip searches with no individualized suspicion that weapons or contraband will be found on the person being searched. (Hall Suppl. Dep., at 4–6; Ellis Suppl.Dep., at 11–13). The defendants argue that the strip search policy that was in effect in September, 1985 required such reasonable suspicion. They argue that subjecting one held on a civil body attachment to such a search would have contravened the written strip search policy.

■ To hold a municipality liable under § 1983, the plaintiff must show that particular actions by municipal employees, undertaken without formal authorization, implicate the municipality by establishing the existence of an entrenched practice with the effective force of a formal policy. *Gray v. County of Dane*, 854 F.2d 179 (7th Cir.1988), *citing Wolf–Lillie v. Sonquist*,

---

4. According to defendants, the jail had only two holding areas for female detainees when Ms. Jones was brought to the Elkhart County Jail: isolation cells and the general ward.

5. Ms. Jones asserts she is entitled to judgment against the Elkhart County Sheriff on the issue of liability. The court interprets her assertion of liability to be against Elkhart County.

699 F.2d 864, 870 (7th Cir.1983). This theory of municipal liability is based upon *Monell v. New York Department of Social Services,* 436 U.S. 658, 691–694, 98 S.Ct. 2018, 2036–37, 56 L.Ed.2d 611 (1978), which teaches that a municipality may be held liable only if the constitutional deprivation resulted from official policy or entrenched practices. *Id.* at 691–94, 98 S.Ct. at 2036–37.

Because Sheriffs Bowman and Yohn are sued in their official capacities, their actions are equated to the actions of the county. *Brandon v. Holt,* 469 U.S. 464, 472, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1984). If the "custom or practice" of the Elkhart County Jail personnel was to strip search all pretrial detainees before they entered the general jail population without any reasonable suspicion that weapons or contraband would be found on that person, then Elkhart County will be liable for Ms. Jones' Fourth Amendment deprivation.

The defendants' position is ambiguous. In support of their summary judgment motion on the issue of punitive damages, the defendants stated, "Plaintiff's search was conducted by Sheriff's deputies pursuant to a written policy; Plaintiff was not arbitrarily singled out." (Defendant's Memorandum of May 27, 1988, at 9). In opposition to Ms. Jones' summary judgment motion, the defendants stated, "A genuine issue of fact present in this case is whether the official policy of the Elkhart County Sheriff's Department in effect on September 25, 1985, required that Plaintiff be strip searched." (Defendant's Memorandum of June 10, 1988, at 2). The court believes the second statement is correct.

Captain Stutsman's testimony at the preliminary injunction hearing indicates that the county sheriff's practice was to conduct strip searches only when the officer believed such a search to be in the interest, safety and security of the officers and other inmates or where the officer believed the subject was concealing some item. The testimony of Ms. Hall and Ms. Ellis indicates that the county sheriff's practice was to conduct strip searches of all persons being "dressed out" or placed in the general population. It is not the role of the court on summary judgment to choose between these versions.

The defendants have raised a genuine issue concerning the existence of an entrenched practice to conduct strip searches absent reasonable suspicion to give such practice the effective force of a formal policy and, accordingly, summary judgment on the issue of county liability must be denied.

### C. Punitive Damages

The defendants seek judgment on the issue of punitive damages. They argue that no evidence exists from which a jury could determine that they acted with malicious intent, evil motive or reckless or callous indifference to Ms. Jones' constitutional rights. Ms. Jones argues the Sheriff's neglect to conform his practices to clearly established legal guidelines constitutes reckless or callous indifference to her constitutional rights.

Punitive damages may be awarded in § 1983 actions "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others". *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983).

The court cannot find that there is no evidence from which a jury reasonably could determine that the defendants acted with reckless or callous indifference to Ms. Jones' constitutional rights. Accordingly, the defendants' motion for summary judgment should be denied.

### D. Detention

Ms. Jones was detained in the Elkhart County Jail on the civil body attachment from September 25 until her release on October 4, two days after she appeared in court. Ms. Jones alleges in Claim 2 of her amended complaint that the defendants' failure to bring her to court, and her detention for an unreasonable length of time, violated her constitutional rights. (Amended Compl., ¶ 38.). Sheriff Bowman seeks summary judgment on this claim.

1.

■ Sheriff Bowman argues that no evidence exists to show that the length of Ms. Jones' detention in the Elkhart County Jail resulted from any written or unwritten policy of the Elkhart County Sheriff's Department.

Ms. Jones argues that contrary to IND. CODE 34–4–9–2–1[6] the Sheriff did not return her to the county in which the writ was issued and take her before the court which issued the writ. This procedure, according to Ms. Jones, cannot be replaced by merely informing the court that she was being held; Ms. Jones was booked into the County Jail on September 25, 1985 at 2:10 p.m. and the records show the court was notified that she was in custody at 3:05 p.m. on the same day. Ms. Jones argues that according to the statute, the Sheriff must either take the person to court or release her on bail as in criminal matters or after the person has deposited an escrow. IND.CODE 34–4–9–2.1(d). The Sheriff cannot hold a person brought into custody on a civil body attachment indefinitely. Ms. Jones also asserts that Captain Stutsman testified at the preliminary injunction hearing that it was normal for individuals detained on civil body attachments to be detained up to three days. Thus, Ms. Jones argues, because the Sheriff neither took her to court nor allowed her to pay into escrow and detained her for seven days, he is liable for false imprisonment.

2.

Sheriff Bowman was sued in both his individual and official capacities. An official capacity suit against a municipal officer is essentially a suit against the municipality. *Brandon v. Holt*, 469 U.S. 464, 472, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1984). Accordingly, to hold Sheriff Bowman liable in his official capacity, Ms. Jones must come forth with proof sufficient to hold the municipality, Elkhart County, liable. Different standards govern the claims against Sheriff Bowman in his individual capacity.

a.

■ For a municipality to be liable under § 1983, a causal connection must exist between the municipality's policy or custom and the plaintiff's injury. *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1985). The parties refer to statements made during the preliminary injunction hearing held on June 4, 1987. A court may consider the entire record before it including pleadings, affidavits, and a partial transcript of the hearing on the plaintiff's motion for preliminary injunction in determining whether to grant a motion for summary judgment. *Raitport v. National Bureau of Standards*, 385 F.Supp. 1221 (D.Pa.1974). The court will consider all matters of record in determining whether a genuine issue of material fact forecloses judgment as a matter of law on the issue of whether the county, by its sheriff's actions,

6. **I.C. 34–4–9–2.1 Writ of attachment of the body of the person**

Sec. 2.1. (a) For the purposes of this section: "Sheriff" means the sheriff of the county in which a court issues a writ of attachment under this chapter.

"Assisting sheriff" means the sheriff of a county other than the county in which a writ of attachment has been issued under this chapter.

(b) For the purpose of procuring personal jurisdiction over a person who has allegedly violated a court order or who is otherwise in contempt of court, the court may issue a writ of attachment of the body of the person. The writ shall:

(1) be directed to a sheriff or assisting sheriff; and

(2) fix an amount of:

 (A) bail, if the order that the person has allegedly violated does not concern a child support obligation; or

 (B) escrow, if the order that the person has allegedly violated concerns a child support obligation.

(c) A sheriff or assisting sheriff who receives an order under this section shall immediately:

(1) serve the writ; and

(2) take the person into custody.

A sheriff may serve a writ of attachment and take the person into custody in any county.

(d) If an assisting sheriff takes a person into custody, he shall notify the sheriff. The sheriff, after notification, shall immediately return the person to the county in which the writ was issued and take the person before the court which has issued the writ. However, the sheriff may release the person:

(1) on bail as in criminal matters; or

(2) after any person has deposited the amount of escrow in accordance with subsection (e) of this section.

caused the delay in bringing Ms. Jones to court on the civil body attachment.

In response to Ms. Jones' motion for preliminary injunction, the defendants submitted an affidavit from Judge Platt which stated that extenuating circumstances in Ms. Jones' case precluded the court from affixing bond or escrow: Ms. Jones had failed to comply with prior court orders and had attempted to take and secrete the child from the custodial parent. (Platt Aff., ¶¶ 2–3). Judge Platt also attributed the delay in bringing Ms. Jones to court to the need of Ms. Jones' ex-husband to obtain new counsel. *Id.* at p. 2.

There must be some suggestion that the length of Ms. Jones' detention was the result of county policy. *Brown v. Patterson,* 823 F.2d 167 (7th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 162, 98 L.Ed. 2d 117 (1987); *cf. Patton v. Przybylski,* 822 F.2d 697 (7th Cir.1987). Ms. Jones argues that Captain Stutsman's testimony at the preliminary injunction hearing demonstrates a policy of holding persons on civil body attachments for three days. (Trans. prelim. inj. hrg., at 38). Under Indiana law, the sheriff has no authority to set bond, IND.CODE 35–33–8–4(a), however, so the average length of stay cannot support an inference of a county policy.

In light of Judge Platt's affidavit, the court can find no evidence that indicates the sheriff or any departmental policy caused Ms. Jones' extended detention on the body attachment. The record reveals that problems unique to the case involving Ms. Jones as determined by the presiding judge in her case caused her length of detention. The court can find no issue of fact that would foreclose judgment for the county on this issue.

#### b.

 Although no fact issue forecloses judgment for Sheriff Bowman in his official capacity, a different analysis governs his liability in his individual capacity. Individual liability under 42 U.S.C. § 1983 must be based on personal responsibility. *Morales v. Cadena,* 825 F.2d 1095 (7th Cir.1987); *Schultz v. Baumgart,* 738 F.2d 231, 238 (7th Cir.1984). A defendant can

be held liable under § 1983 in his individual capacity only if he caused or participated in the constitutional deprivation; a "causal connection, or an affirmative link" between the conduct and the defendant must exist. *Wolf–Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir.1983). An official is personally involved if (a) he participates directly in the constitutional deprivation, (b) he acts or fails to act with reckless disregard of the plaintiff's constitutional rights, or (c) the conduct that deprived the plaintiff of his constitutional rights occurred at the official's direction or with his knowledge and consent. *Rascon v. Hardiman,* 803 F.2d 269, 274 (7th Cir.1986); *Smith v. Rowe,* 761 F.2d 360, 369 (7th Cir.1985); *Crowder v. Lash,* 687 F.2d 996, 1005 (7th Cir.1982).

Ms. Jones has pointed to no evidence of any role Sheriff Bowman personally played in the length of her detention. His liability must be based solely on the action or inaction of his subordinates, which cannot suffice for individual liability under § 1983. *See Patton v. Przybylski,* 822 F.2d 697, 701 (7th Cir.1987) ("Patton must find out who was actually responsible for the delay in bringing him before Judge Crilly and sue that person, and he hasn't done this.... there is no suggestion that Sheriff Elrod knew anything about the case."). Accordingly, even assuming a sheriff might be individually liable for his personal involvement in holding a person in custody too long at the direction of a state judge, *but see Zuranski v. Anderson,* 582 F.Supp. 101, 109–110 (N.D.Ind.1984), Ms. Jones has come forth with no evidence from which a jury could find that Sheriff Bowman was involved personally in the length of Ms. Jones' detention.

#### c.

Because Ms. Jones has come forth with no evidence to show either the existence of a county policy or custom responsible for her extended detention or that Sheriff Bowman was personally involved in her detention. Accordingly, Sheriff Bowman is entitled to judgment on this claim in both his individual and official capacities.

*E. Permanent and Injunctive Relief*

The moving defendants seek judgment on Ms. Jones' claims for injunctive and declaratory relief.

1.

The defendants argue that Ms. Jones is not entitled to injunctive relief as a result of the court's ruling on her motion for preliminary injunction: Ms. Jones did not have the requisite standing to seek such equitable relief. *See Jones v. Bowman,* 664 F.Supp. 433 (N.D.Ind.1987). The defendants also argue that declaratory relief is inappropriate because there is a lack of an actual controversy in that Ms. Jones is unlikely to be brought in on another body attachment and strip searched again.

Ms. Jones argues that summary judgment on this claim is inappropriate because Sheriff Yohn changed the strip search policy sixteen days after the court's ruling on the preliminary injunction. She asserts the change in policy indicates that she prevailed on the merits because this lawsuit was the catalyst for the policy change. Ms. Jones argues that the court should consider the effect of Marilyn Jones' lawsuit on the change in the Sheriff's policy on a motion for attorney fees and not at the summary judgment stage.

On June 17, 1987, the court determined that Ms. Jones lacks standing to seek preliminary injunctive relief. Ms. Jones showed neither continuing, present, adverse effects of her 1985 strip search at the hands of the Elkhart County Sheriff personnel nor any likelihood that she will be subjected to another strip search in the future. Ms. Jones was not entitled to injunctive relief in June, 1987; her status has not changed. Ms. Jones has produced no evidence that could entitle her to further relief. Accordingly, the moving defendants are entitled to judgment as a matter of law on the claim for injunctive relief.

2.

The moving defendants assert that there is no "actual controversy" that would entitle Ms. Jones to declaratory relief.

The Declaratory Judgment Act, 28 U.S.C. § 2201, expressly provides, "In a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration." A court must determine whether facts alleged, under all the circumstances, show that a substantial controversy exists between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *Golden v. Zwickler,* 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969); *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270 (1941). There must be a substantial controversy between parties having real, adverse interests at the time the court is prepared to render judgment. *Preiser v. Newkirk,* 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975).

Ms. Jones was brought to the Elkhart County Jail on September 25, 1985 pursuant to a body attachment. According to the defendants, she was released from custody on October 4, 1985, two days after her court appearance. Judge Platt forwarded the case to Dearborn County, Indiana, where all the parties resided. On July 2, 1987, the Elkhart County Jail strip search policy was changed to exclude strip searches of persons in custody on civil body attachments without probable cause to believe that weapons or contraband were being concealed on the person. (Stutsman Aff., Exhibit A, .02(A)).

Ms. Jones resides in Dearborn County, Indiana; the domestic relations case in which the body attachment was issued was transferred to Dearborn County, Indiana. The court can find no likelihood that Ms. Jones again would be subject to a civil body attachment issued from an Elkhart County court that would subject her to a strip search. Ms. Jones' claim does not create a controversy of "sufficient immediacy and reality" that must exist for declaratory relief to be entered. *Golden v. Zwickler,* 394 U.S. at 109, 89 S.Ct. at 960; *see Zuranski v. Anderson,* 582 F.Supp. 101 (N.D.Ill. 1984). Accordingly, the moving defendants are entitled to judgment on this issue.

### 3.

■ Ms. Jones' arguments in opposition to summary judgment on the issues of injunctive and declaratory relief are directed to the recovery of attorney fees at the close of this case pursuant to 42 U.S.C. § 1988. Whether Ms. Jones is a prevailing party for purposes of § 1988 is deferred until the appropriate time to address such matters. The potential award of fees has no significance to whether a genuine issue of material fact exists to foreclose summary judgment.

### F. Defendant Randy Yohn

■ Randy Yohn replaced Dick Bowman as Sheriff of Elkhart County following the election in November, 1986. Thus, he became Sheriff more than one year after the occurrences that give rise to Ms. Jones' complaint, and, therefore, he had no personal knowledge of, or participation in, the events of which Ms. Jones complains.

Ms. Jones argues that Sheriff Yohn was made a party to this action by way of her amended complaint, not because of his personal involvement in the incident in question, but as the chief policy-making official who changed the strip search policy shortly after this court's judgment on the preliminary injunctive relief. Ms. Jones asserts that because the issues of "prevailing party" and entitlement to attorney fees will be resolved after the hearing on damages and Sheriff Yohn is liable for such costs and fees, it would be inappropriate to grant summary judgment.

Ms. Jones sued Sheriff Yohn in both his individual and officials capacities as Sheriff of Elkhart County. To prevail against defendant Yohn in his individual capacity, Ms. Jones must show personal involvement. *See Morales v. Cadena,* 825 F.2d 1095 (7th Cir.1987); *Schultz v. Baumgart,* 738 F.2d 231, 238 (7th Cir.1984); *Wolf–Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir.1983). The court need not analyze Sheriff Yohn's personal involvement because, as Ms. Jones concedes, the events giving rise to this action occurred before he became Sheriff of Elkhart County.

■ Sheriff Yohn also is sued in his official capacity. For the reasons set forth in Part III–D, *supra,* Ms. Jones has not come forth with evidence to support her official capacity claim for damages arising from the length of her detention. Nonetheless, as set forth in Part–III–B, *supra,* a trier of fact may find the county liable for damages for the strip search to which Ms. Jones was subjected. Finally, the county's potential liability for purposes of awarding fees and costs under 42 U.S.C. § 1988 remains. *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Accordingly, defendant Yohn is entitled to judgment on all claims in his individual capacity, and to judgment in his official capacity on the extended detention claim, but is not entitled to judgment on the official capacity claim based on the strip search.

### G. Pendent State Claims

Ms. Jones also brings pendent state claims for false imprisonment and invasion of privacy. The moving defendants seek judgment on these claims because (1) Ms. Jones failed to comply with the notice provisions of the Indiana Tort Claims Act, (2) Sheriff Bowman is immune from suit for false imprisonment, and (3) Ms. Jones has not alleged facts constituting the state tort of invasion of privacy. For the reasons that follow, the court rejects the first argument, but concurs with the second and third.

### 1.

■ The defendants argue that Ms. Jones' pendent state claims of invasion of privacy and false imprisonment must fail because she failed to comply with the notice requirement of Indiana's Tort Claims Act, IND.CODE 34–4–16.5–7. The defendants submitted the affidavit of Charles Miller, auditor of Elkhart County, who performs the duties of clerk of the county executive for Elkhart County, attesting that neither the records of the Board of Commissioners nor of the county executive reflect any notice of a tort claim filed by Ms. Jones.

Ms. Jones argues that the defendants' assertion of failure to give notice is an affirmative defense that is waived unless raised in the defendants' answer. According to Ms. Jones, the defendants did not assert this affirmative defense in their answers to the complaint or amended complaint.

A federal court sitting in diversity must apply the state law as declared by the highest state court or otherwise by the intermediate appellate court of the state. *Affiliated FM Ins. Co. v. Trane Co.*, 831 F.2d 153, 155 (7th Cir.1987); *see Green v. J.C. Penney Auto Ins. Co.*, 806 F.2d 759 (7th Cir.1986). The court concurs with Ms. Jones' interpretation of Indiana law; failure to file notice pursuant to the Indiana Tort Claims Act must be pleaded as an affirmative defense. Under Indiana law, failure to give notice is a defense which a city must assert in its answer to a plaintiff's complaint. *Health & Hospital Corp. v. Gaither*, 272 Ind. 251, 397 N.E.2d 589, 592 (1979); *Thompson v. City of Aurora*, 263 Ind. 187, 325 N.E.2d 839 (1975).

Accordingly, because the moving defendants failed to plead the Indiana Tort Claims Act's notice provision as an affirmative defense in their answer to Ms. Jones' amended complaint, they are foreclosed from asserting it now in their motion for summary judgment. The defendants' motion for summary judgment on this issue is denied.

2.

 Sheriff Bowman asserts that he is immune from liability on Ms. Jones' claim for false imprisonment. He argues that Ms. Jones' detention resulted from Judge Platt's orders and neither the Sheriff nor his deputies were free to release Ms. Jones until the Superior Court ordered them to do so.

Ms. Jones argues that Indiana's Tort Claims Act strips law enforcement officers of any immunity for false imprisonment. She asserts that Sheriff Bowman had no authority to imprison Marilyn Jones for nine days and Indiana law does not immunize him for this tortious act. The court concurs with Ms. Jones' analysis of the Indiana Tort Claims Act, but finds that this analysis disproves an immunity that Sheriff Bowman did not raise.

Indiana's Tort Claims Act, IND.CODE 34-4-16.5-1 *et seq.*, provides immunity to government employees who act within the scope of their employment from "the adoption and enforcement of or failure to adopt or enforce a law ... unless the act of enforcement constitutes false arrest or false imprisonment". IND.CODE 34-4-16.5-3(7). *See State v. Whitney*, 176 Ind. App. 615, 377 N.E.2d 652 (1978) (state not immune from liability for false imprisonment for conduct of state police officer arresting a traffic offender while effectuating the arrest in plain clothes and driving unmarked car).

 The Tort Claims Act, then, does not render county sheriffs immune from liability for false imprisonment committed within the scope of their employment. As discussed in Part III–D, *infra*, however, Ms. Jones has offered no evidence that the length of her detention resulted from anything other than Judge Platt's orders. Accordingly, Sheriff Bowman is entitled to immunity, not by virtue of the Tort Claims Act, but by virtue of judicial immunity:

> The defendant sheriff and warden have no choice under Indiana law but to carry out the order of a judge when that judge is acting in his judicial capacity in a matter over which he has jurisdiction. To require the sheriff or warden to investigate each order of commitment by a judge an to independently determine if the sentence was legally imposed would be absurd. Here when carrying out a direct order of a court, the sheriff and warden enjoy the immunity afforded the committing judge.

*Zuranski v. Anderson*, 582 F.Supp. 101, 109–110 (N.D.Ind.1984); *see Wood v. Worachek*, 618 F.2d 1225, 1231 (7th Cir.1980). Under Indiana law, judges are immune for actions taken in the exercise of a judicial function, and the Tort Claims Act did not abolish that immunity. *Cato v. Mayes*, 270 Ind. 653, 388 N.E.2d 530, 532 (1979). That judicial immunity protects Sheriff Bowman from liability for Ms. Jones' extended detention.

### 3.

■ Ms. Jones seeks recovery for invasion of privacy. The defendants argue that the facts alleged in Ms. Jones' complaint do not give rise to such a claim under Indiana law. Ms. Jones did not respond to this argument.

The tort of invasion in privacy, as established in Indiana law, consists of:

The unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities, in such manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities.

*Continental Optical Co. v. Reed,* 119 Ind. App. 643, 86 N.E.2d 306, 308 (1949) (en banc). The facts as alleged in Ms. Jones' cause of action do not fall within this definition and, accordingly, do not give rise to a cause of action for invasion of privacy under Indiana law. The defendants are entitled to judgment as a matter of law on this issue.

### IV. Conclusion

For the foregoing reasons, the court now:

1. DISMISSES the claim against the Office of Sheriff of Elkhart County;

2. GRANTS IN PART the plaintiff's motion for partial summary judgment, and finds, pursuant to Fed.R.Civ.P. 56(d), that the strip search violated the plaintiff's Fourth Amendment rights;

3. DENIES IN PART the plaintiff's motion for partial summary judgment insofar as it seeks a determination of liability for the strip search, on the ground that a genuine issue of fact exists with respect to the existence of a county policy concerning strip searches of pretrial detainees;

4. DENIES the defendants' motion for partial summary judgment with respect to the plaintiff's punitive damages claim;

5. GRANTS the defendants' motion for partial summary judgment for defendant Bowman on the plaintiff's claim that the length of her detention violated her constitutional rights;

6. GRANTS the defendants' motion for partial summary judgment for the moving defendants on the claims for injunctive and declaratory relief, without prejudice to the plaintiff's claim of entitlement to an award of fees and costs as a "prevailing party" based on post-filing policy changes;

7. GRANTS the defendants' motion for partial summary judgment for defendant Yohn on all claims other than the official capacity claim based on the strip search;

8. GRANTS the defendants' motion for partial summary judgment for defendant Bowman on the pendent state false imprisonment claim; and

9. GRANTS the defendants' motion for partial summary judgment on the pendent state invasion of privacy claim.

SO ORDERED.